UNITED STATES of America,
Plaintiff–Appellee,

v.

Jerry Bobby REEVES, Defendant–
Appellant.

No. 99–30158.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 2000

Filed May 1, 2000

Mark Bennett Weintraub, Assistant Federal Public Defender, Eugene, Oregon, for the defendant-appellant.

Jeffrey J. Kent, Assistant United States Attorney, Eugene, Oregon, for the plaintiff-appellee.

Before: NOONAN, GRABER and FISHER, Circuit Judges.

FISHER, Circuit Judge:

Appellant Jerry Bobby Reeves was convicted of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), following a conditional guilty plea under Rule 11(a)(2) of the Federal Rules of Criminal Procedure. He appeals the district court's denials of his motion to suppress and his request for a *Franks* hearing. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Reeves is currently in custody serving the 156–month sentence imposed in this case. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

### Factual and Procedural Background

On July 10, 1997, detectives from the Jackson County Narcotics Enforcement Team (JACNET), with the assistance of other law enforcement entities, executed a search warrant on Reeves' residence. The warrant permitted officers to search for "evidence of the possession, manufacture, and delivery of the controlled substance methamphetamine." The warrant stated that "[t]he evidence may include, but is not limited to the following: methamphetamine, a controlled substance, packaging materials, scales, ... and other items related to the manufacturing and distribution of controlled substances, in particular, methamphetamine."

A magistrate judge issued the search warrant based on the July 10, 1999 affidavit of Detective Ray G. Leach, a Medford Police Department detective assigned to JACNET. Detective Leach's belief that Reeves' property would contain the evidence sought was predicated on (1) information from a Confidential Reliable Infor-

mant (CRI) that the CRI had observed methamphetamine contained in several small plastic packages for sale at Reeves' residence in the past 72 hours, (2) a criminal history check of Reeves that revealed more than 20 prior charges for controlled substance offenses and (3) the "extreme steps" Reeves had taken to "fortify his residence."

Detective Leach's affidavit also contained information supporting the CRI's credibility. Most importantly, Detective Leach stated that "[t]he CRI ha[d] provided information which ... led to three search warrants, with narcotic seizures each time, and three arrests." In addition, the CRI had made three controlled buys under Detective Leach's direction.

The search of Reeves' residence produced approximately one and one-half pounds of methamphetamine and evidence related to its manufacture and distribution. Reeves later admitted to having control of the drugs. The evidence obtained also led officers to a storage locker, not located on the premises, which contained a handgun and additional evidence of methamphetamine manufacturing.

Reeves moved to suppress all of the evidence on the grounds that (1) the affidavit in support of the search warrant intentionally or recklessly omitted material evidence negating probable cause, (2) the affidavit lacked probable cause even considering the CRI's information and (3) the warrant was overbroad. Reeves also sought suppression of his post-arrest statements and evidence derived from the search of the storage locker as fruits of the allegedly unlawful search of Reeves' home.

In addition, Reeves requested a *Franks* evidentiary hearing on the validity of the affidavit underlying the warrant. Reeves specifically suggested that the informant was X, who had previously been convicted of giving false information about his address to the police. Reeves contended that if Detective Leach had included this information about X's criminal history, X's

credibility—and thus the reliability of the information he provided—would have been destroyed, leaving the affidavit with insufficient information to support probable cause. We do not confirm Reeves' guess but address the characteristics of the CRI before the trial court.

Because of the need to protect the identity of the CRI, the district court conducted an *in camera* hearing regarding Reeves' right to a *Franks* hearing. During the hearing, Detective Leach revealed that the actual CRI in fact had a previous criminal charge of providing false information to a law enforcement officer. Detective Leach stated that his department's policy was not to include background information on a CRI so as "to maintain a vagueness," *i.e.*, to protect his/her identity.

Following the *in camera* hearing, the district court denied Reeves' motion to suppress, concluding that the affidavit supported probable cause and that the warrant was not overbroad.

### *Discussion*

#### 1. Denial of a *Franks* hearing

■■■ We review de novo a district court's denial of a *Franks* hearing. *See United States v. Motz,* 936 F.2d 1021, 1024 (9th Cir.1991). We also review de novo a district court's determination that probable cause existed for the issuance of a search warrant. *See United States v. McIver,* 186 F.3d 1119, 1128 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1210, 145 L.Ed.2d 1111 (2000). Whether probable cause is lacking because of alleged misstatements or omissions in the supporting affidavit is also reviewed de novo. *See United States v. Brady,* 993 F.2d 177, 179 (9th Cir.1993).

■■■ A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false informa-

tion. *See United States v. Stanert,* 762 F.2d 775, 780–81 (9th Cir.1985), *amended by,* 769 F.2d 1410 (9th Cir.1985). If an informant's history of criminal acts involving dishonesty renders his/her statements unworthy of belief, probable cause must be analyzed without those statements. *See United States v. Hall,* 113 F.3d 157, 159 (9th Cir.1997).

■■ We have recognized the importance of confidential informants to the criminal justice system. *See, e.g., United States v. Kiser,* 716 F.2d 1268, 1270–71 (9th Cir.1983). When a defendant challenges the validity of a warrant by questioning the reliability of a confidential informant, the proper procedure, followed here, is for the trial court to conduct an *ex parte, in camera* hearing to determine whether the defendant "has made a 'threshold substantial showing of falsehood.'" *Id.* at 1273 (quoting *United States v. Moore,* 522 F.2d 1068, 1073 (9th Cir.1975)). During the *in camera* hearing, the district court's inquiry into the history and reliability of the CRI revealed that the CRI had a criminal history-containing some charges involving dishonesty-that had not been disclosed to the magistrate judge who issued the search warrant.

■■■ Once the defendant makes the proper initial showing, "the *ex parte, in camera* hearing must be extended. Its purpose should be to determine if [the defendant] is entitled to an open evidentiary hearing on his *Franks* claim." *Id.* If inclusion of the omitted facts would not have affected the probable cause determination, no *Franks* hearing is required. *See United States v. Fisher,* 137 F.3d 1158, 1164 (9th Cir.1998). The determination of whether information provided by an informant establishes probable cause is based on the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

In *Hall,* 113 F.3d at 161, we affirmed the district court's grant of a motion to suppress evidence when a police officer

failed fully to disclose the criminal history of an informant who testified at a search warrant hearing. The government had revealed a substantial part of its informant's criminal history to the magistrate judge, but had failed to disclose that the informant had been convicted of falsely reporting a crime. *See id.* at 158. We presumed that this conviction was for the crime under Alaska Stat. § 11.56.800 for giving " 'false information to a peace officer with the intent of implicating another in a crime,' " *id.* (quoting Alaska Stat. § 11.56.800(a)(1)), and concluded that the informant's testimony could not be used to support the search warrant: "What most impeached Dang's credibility was his false report to the police. That crime, more than his crimes carrying higher penalties, suggested the possibility that he would lie to the police to frame an innocent man." *Id.* at 160.

█ In the present case, the district court found that the CRI's crimes were of a sufficiently different character from those of the informant in *Hall* so as to distinguish that case: "Any indication in the criminal history of the informant here, of which the affiant was aware, was of a different and less significant nature." We do not agree with that determination. Any crime involving dishonesty necessarily has an adverse effect on an informant's credibility. In the absence of countervailing evidence to bolster the informant's credibility or the reliability of the tip, an informant's criminal past involving dishonesty is fatal to the reliability of the informant's information, and his/her testimony cannot support probable cause. *See United States v. Meling*, 47 F.3d 1546, 1554–55 (9th Cir.1995).

In *Meling*, we held that, despite the fact that the informant had "spent the better part of his adult life involved with the criminal justice system, mostly for crimes involving dishonesty" and had "a documented history of harming his family through dishonesty," *id.* at 1554, the government's deliberate failure to include this information in a wiretap application "would not completely undermine [the informant's] credibility, and thus would not require that the information he provided be completely disregarded." *Id.* at 1555. Specifically, we concluded that the convictions involving dishonesty were "stale" and that the informant had come forward despite threats of retaliation from family members and gave information that firmly established the basis of his knowledge of the suspect's crimes. *Id.* Moreover, the untruths and omissions in the wiretap application related to the informant's credibility and not to his information, and there was "considerable independent evidence" supporting his information. *Id.*

In this case, as the district court correctly found, there is also important countervailing evidence which diminishes the adverse effect of the CRI's prior criminal history involving dishonesty: "this affidavit had more than a mere reliance on the informant's word. There was also the factor that in the affidavit the affiant indicated that this informant had previously provided information that led to three other investigations and arrests." That the CRI had previously provided truthful and reliable information to police that led to three other search warrants, narcotics arrests and convictions significantly bolsters his/her credibility and the reliability of the information provided. We hold that these facts are sufficient to outweigh the doubts about the informant's credibility raised by the history of criminal conduct involving dishonesty. *See United States v. Angulo-Lopez*, 791 F.2d 1394, 1397 (9th Cir.1986) ("If the informant has provided accurate information on past occasions, he may be presumed trustworthy on subsequent occasions. *When the information provided in the past involved the same type of criminal activity as the current information, the inference of trustworthiness is even stronger.*" (citations omitted) (emphasis added)). The facts are also sufficient to distinguish this case from *Hall*, in which there was no other evidence to salvage the informant's credibility or bolster the reliability of his information.

Accordingly, the district court did not err in denying Reeves' request for a *Franks* hearing because, even if Detective Leach had informed the magistrate judge of the CRI's prior criminal history, it would not have affected the probable cause inquiry.

■ Although we recognize the importance of maintaining the confidentiality of police informants, we do not approve of the practice of excluding altogether an informant's relevant criminal history from an affidavit used to support a search warrant request, particularly when lesser measures will suffice. In some cases, for example, an informant's criminal history may be "sanitized" by replacing clearly identifying details with a more general description of the relevant facts, so long as the material essence remains.[1] In many cases, such as this one, a CRI with some criminal background involving dishonesty may nonetheless be considered reliable enough to support probable cause based on the existence of other facts supporting his/her credibility or other extrinsic evidence supporting the reliability of the tip. *See Meling,* 47 F.3d at 1555. Nonetheless, courts should have access to all available relevant information to aid them in their determination of probable cause.

### 2. Denial of the Motion to Suppress

■ We must next consider whether the affidavit provides sufficient probable cause to support the search warrant. "A magistrate judge's finding of probable cause is entitled to great deference and this court will not find a search warrant invalid if the magistrate judge had a 'substantial basis' for concluding that the supporting affidavit established probable cause." *United States v. Clark,* 31 F.3d 831, 834 (9th Cir.1994). Probable cause exists when the magistrate judge finds that, "[c]onsidering the totality of the circumstances," there is " 'a fair probability that contraband or evidence of a crime will

be found.' " *United States v. Gil,* 58 F.3d 1414, 1419 (9th Cir.1995) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Using this standard, we hold that Detective Leach's affidavit supported probable cause. The affidavit states that the CRI had observed "one quarter, to one half of an ounce of methamphetamine . . . packaged up in several small plastic packages for sale" at Reeves' residence in the past 72 hours. Detective Leach discussed the appearance and packaging of methamphetamine with the CRI and stated his confidence that the CRI "has the ability to recognize methamphetamine when observed." Under these circumstances, there was a "fair probability that contraband or evidence of a crime [would] be found" at Reeves' residence.

### 3. Scope of the Warrant

■ Appellant argues that the inclusion of the words "may include, but is not limited to" and "other items" in the search warrant rendered it impermissibly overbroad. Whether a search warrant describes items to be seized with sufficient specificity is reviewed de novo. *See United States v. Noushfar,* 78 F.3d 1442, 1447 (9th Cir.1996). "A search warrant must allege with reasonable particularity the types of items that may be seized. Otherwise, it cannot provide meaningful guidance to the officer charged with its execution." *See United States v. Clark,* 31 F.3d 831, 836 (9th Cir.1994) (citation omitted).

In this case, the catch-all phrases of which Reeves complains exist in the context of authorization for a search for "evidence of the possession, manufacture, and delivery of the controlled substance methamphetamine." This context adequately limits the scope of the search and thus prevents it from being overbroad. *See United States v. Washington,* 797 F.2d 1461, 1472 (9th Cir.1986) (finding that a warrant authorizing seizure of "records,

---

**1.** We are encouraged by the government's representation that the law enforcement office involved in this case has discontinued its practice of not including a CRI's criminal history in affidavits.

notes, [and] documents indicating [the defendant's] involvement and control of prostitution activity including *but not limited to,* photographs, handwritten notes, ledger books," was not overbroad, because the warrant "effectively tells the officers to seize only items indicating prostitution activity") (emphasis in original).

Because the search warrant was proper, the post-arrest statements and evidence derived from the search of the storage locker were also properly admitted.

AFFIRMED.