**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Micah Lynn BROWN, Defendant—Appellant.**

**No. 01–30155.**
**D.C. No. CR–00–30018–MRH.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 2002.

Decided April 1, 2002.

---

Before B. FLETCHER, O'SCANNLAIN, and BERZON, Circuit Judges.

MEMORANDUM *

Micah Lynn Brown pleaded guilty and was sentenced to 46 months imprisonment for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). In this appeal, Brown challenges the district court's denial of his motion to suppress, its calculation of his criminal history points, and its refusal to depart downward from the Sentencing Guidelines. We affirm. Because the parties are familiar with the facts of this case, we do not recount them here.

1. The Terry Stop and the Search of the Box. Brown contends, first, that the police did not have reasonable suspicion for the *Terry* stop, and, second, that the stop exceeded its proper scope.

■ (A). We conclude that under the totality of the circumstances here, the officers who stopped Brown had "a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (internal quotation marks omitted). It was reasonable for Detective Hatten to rely on the statements of the informant, despite the fact that he was aware of her criminal history and her drug use. *See United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir.2000). Detective Hatten had previously received reliable information from the informant that led to several search warrants and some arrests, and she had successfully partici-

pated in controlled buys for the police. *See id.* at 1043; *United States v. Angulo–Lopez*, 791 F.2d 1394, 1397 (9th Cir.1986) ("When the information provided [by the informant] in the past involved the same type of criminal activity as the current information, the inference of trustworthiness is even stronger."). Moreover, the informant communicated her information in the course of three separate phone calls, providing the officers with predictive information that they were able to verify before they stopped Brown and his cohorts. *See Illinois v. Gates*, 462 U.S. 213, 244, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■ Although not all of the police officers were aware of every piece of information known to Detective Hatten, his knowledge can be attributed to the other officers whom he instructed, so long as their collective knowledge amounted to reasonable suspicion. *United States v. Hensley*, 469 U.S. 221, 232–33, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir.2000). Their collective knowledge included the following: Brown was a known drug user who had previously purchased drugs from Jones, a known drug dealer; immediately before Brown and Lacey arrived at the residence, Jones had been in his living room next to a table containing large amounts of drugs and cash; Brown and Lacey stayed at the residence only briefly; and they left with Jones, who was carrying the black tote bag reportedly containing the drugs.

We conclude that the police had enough knowledge, based on the informant's statements and their own observations, to give rise to a reasonable suspicion that Brown had engaged in or was about to engage in criminal activity.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

■ (B). Brown contends that, by asking about the contents of the box and opening it, the police exceeded the justifiable scope of the *Terry* stop. We find that the *Terry* stop had ended by the time the police asked about the contents of the box. Defense witness Lacey stated several times that the police, before asking about the contents of the box, told him and Brown that they were free to leave. At the point when the police told Brown he was free to leave, he was no longer detained pursuant to the *Terry* stop. The encounter had become consensual, because a reasonable person would have felt free to leave when told he could do so in the course of a friendly encounter. *See United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

■ We further conclude that Brown's statement about the contents of the box and his consent to search the box were freely and voluntary given. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Once the police had told Brown he was free to leave, there was nothing about the encounter so coercive as to render Brown's statements and consent involuntary. Lacey and the police officers testified that the encounter was friendly and nonconfrontational. Moreover, the police were in plain clothes and kept their guns enclosed in fanny packs. *See United States v. Cormier,* 220 F.3d 1103, 1112 (9th Cir.2000).

Thus, the district court properly admitted the evidence and statements obtained as a result of the search of the box.

■ 2. Sentencing Objections. Brown objects to the inclusion of two of his prior convictions in his criminal history points, claiming that they were "related" to other offenses and should not have received any points. *See* U.S.S.G. § 4A1.2(a)(2) & cmt. n. 3. The district court treated the September 11th and 18th offenses as unrelated

based on an intervening "arrest," even though the offenses were separated only by an intervening citation and release. We need not decide whether a citation is equivalent to an arrest for purposes of U.S.S.G. § 4A1.2, because we conclude that any error was harmless.

It is undisputed that the September 2nd and 11th offenses and the September 18th and 29th offenses were separated by actual arrests, so they must be counted separately. *United States v. Gallegos–Gonzalez,* 3 F.3d 325, 327, 328 (9th Cir.1993). Brown contends, however, that the September 11th offense and the September 29th offense should each receive zero points because they each resulted in a citation and release rather than an arrest. The citation after the September 29th offense, however, would not eliminate any of the one-point offenses, because there were no subsequent offenses that were counted but should not have been. Thus, even if an intervening citation is not equivalent to an "intervening arrest," the number of Brown's one-point offenses would decrease from five to four, not to three as Brown contends. His total criminal history points, however, would remain at ten because the fifth point was not counted before. *See* U.S.S.G. § 4A1.1(c) (providing that one-point offenses can account for no more than four criminal history points).

Thus, the elimination of one point would not have affected Brown's criminal history point total, his criminal history category, or his Guidelines range. Because Brown received the lowest possible sentence in that range, we conclude that the error was harmless.

■ Brown also argues that the district court should have departed downward from the Guidelines. The district court judge explicitly acknowledge his authority to depart from the Guidelines. We cannot

review his refusal to do so. *United States v. Ruiz,* 241 F.3d 1157, 1161–62 (9th Cir. 2001); *United States v. Davoudi,* 172 F.3d 1130, 1132 (9th Cir.1999). Further, the district court need not state reasons for a sentence within a Guidelines range that spans less than 24 months. *United States v. Howard,* 894 F.2d 1085, 1092 (9th Cir. 1990).

We therefore AFFIRM the district court's denial of the motion to suppress, and we AFFIRM Brown's sentence.

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.