UNITED STATES of America, Plaintiff–Appellee,

v.

Tomi MANN, Defendant–Appellant.

United States of America, Plaintiff–Appellee,

v.

James F. Pollender, Defendant– Appellant.

Nos. 03–30432, 03–30435.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 2004.

Filed Nov. 19, 2004.

---

1. Judges O'Scannlain and Fisher are recused.

871

David A. Duke, Law Office of David A. Duke, Billings, MT, for the appellant.

Jeffrey P. Singdahlsen, U.S. Department of Justice, Washington, DC, for the appellee.

Before: SCHROEDER, Chief Judge, TASHIMA, and BYBEE, Circuit Judges.

BYBEE, Circuit Judge:

Following a jury trial, Tomi Mann and James F. Pollender ("Appellants"), were each convicted of three counts of conspiring to manufacture methamphetamine, possessing with intent to distribute methamphetamine, and possessing listed chemicals with intent to manufacture methamphetamine. 21 U.S.C. §§ 841(a)(1), 841(c), 846. Appellants were each convicted of possessing an unregistered "pen gun" in violation of 26 U.S.C. §§ 5861(d) and 5845(e), and Pollender was convicted of possessing two firearms while being a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In addition, Appellants were convicted of two counts of possessing a firearm in furtherance of their drug trafficking conspiracy, in violation of 18 U.S.C. § 924(c).

Pollender appeals the district court's denial of his timely motion to suppress evidence seized during a search of his rural campsite, alleging that, despite his repeated requests, the searching officers failed to present him with a copy of the search warrant at the scene. In the alternative, he argues that the evidence should be suppressed because the search warrant violated the Fourth Amendment's particularity requirement. Both Mann and Pollender appeal the district court's denial of their motions for acquittal on the ground that the evidence introduced at trial was insufficient to support a conviction on the charge that they each possessed two firearms in furtherance of their drug trafficking conspiracy.

Because we conclude that insufficient evidence was introduced at trial to demonstrate that Appellants' firearm possession was "in furtherance of" their drug trafficking crime, we reverse Appellants' conviction under § 924(c). We otherwise affirm.

## I. BACKGROUND

On August 8, 2002, officers in the Sweet Grass County, Montana, Sheriff's Office received a tip that an individual driving an orange pickup truck with Washington plates was selling and possibly manufacturing methamphetamine in the area. Sheriff's Deputy Michael Rodriguez and Montana Highway Patrol Officer James Moody located the truck at a rural campsite on United States Forest Service ("USFS") land. The officers determined that the truck belonged to James Francis Pollender, an individual who had previously been arrested for possession, delivery, and manufacture of drugs in Washington.

After contacting USFS Agent John Walker to discuss the information he had gathered, Rodriguez applied for and was granted a search warrant for the campsite, "including but not limited to any tents, camping equipment, backpacks, etc.; and one orange and red 1997 Ford Pickup ... and the contents of said vehicle including body, trunk, engine and any purses, backpacks, briefcases, bags or other containers located in the vehicle, and any locked compartment located in the back of the vehicle." The items to be searched for and seized were described as "any dangerous drugs and drug paraphernalia, or any other items which are contraband/evidence/fruits of the crime/instrumentalities or articles used in the commission of the crimes." The location was described as the "campground up Cherry Creek Road on the West Fork of the Lower Deer Creek, T2S, R14E, NW 1/4 of Section 21, Sweet Grass County, Montana, occupied by James Francis Pollender."

A Montana District Court Judge signed the search warrant, and a group of officers, both state and federal, traveled to the campsite to execute the search. At approximately 8:15 that evening the officers arrived at the campsite, but Pollender's

truck was missing. After determining that a methamphetamine lab was present, the officers donned Air Purifying Respirators and HAZMAT suits, ventilated the tents, and entered to begin the search. One tent was determined to be a "sleeping tent" and the other a "cooking tent," the latter containing most of the chemicals needed in manufacture.

Approximately 30–45 minutes after the officers had begun executing the warrant, Pollender and Mann arrived at the campsite. The two were immediately placed under arrest, searched, dressed in HAZMAT suits, and transported to the Sweet Grass County Sheriff's Office for questioning and processing. Neither Pollender nor Mann was provided a copy of the search warrant at this time.

Deputy Rodriguez and Detective Steve Crawford remained on the scene to continue the search. The officers searched Pollender's pickup truck, where they found a Smith & Wesson .40 caliber semi-automatic pistol, a loaded "pen gun," ammunition, 30 pseudoephedrine pills, and other drug paraphernalia. Components needed for the manufacture of methamphetamine and various other incriminating items were uncovered in the tents. The officers did not finish the search until 3:30 A.M. on Saturday, September 21, 2002.

On October 17, 2002, a federal grand jury returned an indictment charging the pair with multiple crimes, including conspiring to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846; possessing with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1); possessing listed chemicals, namely, acetone and toluene, with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(c); possessing a Smith & Wesson .40 caliber semi-automatic pistol in furtherance of the drug trafficking crime charged in count 1, in violation of 18 U.S.C. § 924(c); possessing a "pen gun" in furtherance of the drug trafficking crime charged in count 1, in violation of 18 U.S.C. § 924(c); and possessing an unregistered "pen gun" in violation of 26 U.S.C. §§ 5861(d) and 5845(e).

Pollender moved to suppress evidence seized during the search of the campsite alleging insufficient particularity to support the warrant, in part because the warrant mistakenly referred to the location of the campsite as "Lower Deer Creek" rather than "Upper Deer Creek." He also alleged that the officers violated what was then Federal Rule of Criminal Procedure 41(d) because they did not provide him a copy of the search warrant prior to commencing the search or immediately upon his arrival at the campsite.

The district court conducted an evidentiary hearing on the matter in which some contradictory evidence was introduced. Three officers testified that Pollender never requested to see a copy of the warrant, but Pollender testified that he repeatedly made such a request and was refused. Pollender also alleged that he was not given a copy of the search warrant until he appeared in court on September 24, 2002, three days after the search. Helena Patrol Captain, John W. Allendorf contradicted this testimony, stating that he personally served defendants with the search warrant shortly before their arraignment on September 21.

Considering the evidence, the district court concluded that the warrant described the place to be searched and the items to be seized with sufficient particularity, and that, despite the officers' failure to serve Appellants with a copy of the warrant at the scene, Rule 41(d) did not require suppression of the evidence seized. According to the court, when officers arrived at the scene the defendant was not present. As soon as he arrived, he was arrested and

immediately transported from the area because it was deemed hazardous. Pollender was advised of the search warrant and the fact it was being executed around midnight on the evening of his arrest. He received a copy of the search warrant the next morning. The court concluded that the officers had not deliberately disregarded the requirements of Rule 41(d) or prejudiced Pollender's rights because, *inter alia,* exigency mandated Pollender's immediate removal from the search site. Accordingly, the court denied Pollender's motion to suppress.

At the close of all of the evidence, Pollender and Mann unsuccessfully moved for judgments of acquittal on the ground that the evidence introduced at trial was insufficient to support their convictions under 18 U.S.C. § 924(c). The jury convicted Appellants of six drug-related counts, including two counts of possessing a firearm in furtherance of their drug trafficking conspiracy in violation of § 924(c). These appeals followed.

## II. STANDARD OF REVIEW

While we review *de novo* the district court's denial of Pollender's motion to suppress, the factual findings supporting that denial are reviewed for clear error. *See United States v. Peterson,* 353 F.3d 1045, 1048 (9th Cir.2003). The district court's decision that the warrant meets the particularity requirements of the Fourth Amendment, as well as Appellants' challenge to the sufficiency of the evidence supporting their § 924(c) convictions, is reviewed *de novo. See United States v. Reeves,* 210 F.3d 1041, 1046 (9th Cir.2000) (Fourth Amendment particularity); *United States v. Carranza,* 289 F.3d 634, 641 (9th Cir.2002) (sufficiency of evidence).

## III. DISCUSSION

In this appeal, Pollender argues that all evidence seized during the search of his campsite should be suppressed because the service and execution of the warrant violated the terms of former Rule 41(d) as interpreted by this court in *United States v. Gantt,* 194 F.3d 987 (9th Cir.1999). In the alternative, he contends that the evidence should be suppressed because the warrant was facially flawed in that it failed to describe the place to be searched and the items to be seized with particularity. Finally, both Pollender and Mann challenge their convictions for two counts of possessing firearms in furtherance of their drug trafficking conspiracy, arguing that the evidence presented at trial provides an insufficient basis to support their convictions. We address each of these contentions in turn.

### A. Warrant Service Requirements

In response to Pollender's argument that Federal Rule of Criminal Procedure 41(d) requires suppression in this case, the government argues, for the first time in this appeal, that Rule 41 does not apply to the search. Because we conclude that the requirements of Rule 41 are satisfied, we find it unnecessary to address this contention.

At the time of Pollender's motion to suppress, Rule 41(d) of the Federal Rules of Criminal Procedure provided as follows:

*Execution and Return with Inventory.* The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken. The return shall be made promptly and shall be accompanied by a written inventory of any property taken. The inventory shall be made in the presence

of the applicant for the warrant and the person from whose possession or premises the property was taken, if they are present, or in the presence of at least one credible person other than the applicant for the warrant or the person from whose possession or premises the property was taken, and shall be verified by the officer. The federal magistrate judge shall upon request deliver a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant.

While several circuit courts have interpreted this rule .to require, in most circumstances, that federal officers serve warrants at the outset of a search, we are the only circuit to find a violation of this interpretation sufficient to warrant suppression. *See Gantt,* 194 F.3d at 1004.

In *Gantt,* we held that"[a]bsent exigent circumstances, Rule 41(d) requires service of the warrant at the outset of the search on persons present at the search of their premises."[1] *Id.* at 1001. Reasoning that Rule 41 must be interpreted "in the light of the important policies underlying the warrant requirement—to provide the property owner assurance and notice during the search," we concluded that the government violated these requirements "by failing to present [the defendant] with a complete copy of the warrant at the outset of the search of her apartment." *Id.* at 1000. We acknowledged, however, that suppression would not be required

unless the officers deliberately disregarded the Rule or the defendant was prejudiced. *Id.* at 994–95.

██ Importantly, the service requirements set forth in *Gantt* are triggered only in the absence of exigent circumstances. *See id.* at 1001 ("[a]bsent exigent circumstances, Rule 41(d) requires service of the warrant."). In this case, neither Pollender nor Mann was present at the scene when the search commenced. By the time they arrived, the officers had determined that the site contained a clandestine methamphetamine lab. As exemplified by the precautions taken by officers participating in the search, the acids, solvents, and other flammable and toxic chemicals used to manufacture methamphetamine presented an immediate potential for chemical spills, fire, explosion, and contamination. The district court found that the "[e]xigency" of the search site mandated that Pollender be "immediately transported out of the area" for, among other reasons, "his own protection." *United States v. James Pollender and Tomi Mann,* Nos. CR–02–122–BLG–RFC–01 (Mont.Dist.Ct., May 23, 2003); Resp. Supp. Excerpts of Record at 13. This finding was not clearly erroneous.

The exigency presented by the hazardous conditions at the clandestine methamphetamine lab excuses the failure of service in this case. It was not unreasonable for the officers to delay providing a copy of the warrant until the morning after the

---

**1.** We note that the continuing validity of our holding in *Gantt* has been directly called into question by at least one court. *See People v. Ellison,* 4 Misc.3d 319, 773 N.Y.S.2d 860, 868 & n. 5 (S.Ct.2004) (asserting that *Gantt* appears to have been "fully abrogate[d]" by the Supreme Court's decisions in *United States v. Banks,* 540 U.S. 31, 124 S.Ct. 521, 524–25, 157 L.Ed.2d 343 (2003), and *Groh v. Ramirez,* 540 U.S. 551, 124 S.Ct. 1284, 1292 & n. 5, 157 L.Ed.2d 1068 (2004)); *see also United*

*States v. Katoa,* 379 F.3d 1203, 1205 (10th Cir.2004) ("As the Supreme Court recently reaffirmed in *Groh v. Ramirez,* 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004), the Fourth Amendment does not necessarily require officers to serve a warrant at the outset of a search"). While dicta in the Supreme Court's recent decision in *Groh v. Ramirez* casts serious doubt both on our interpretation of Rule 41 and our reasoning in *Gantt,* it fails definitively to abrogate our holding.

search. The district court did not err in denying Pollender's motion to suppress on this ground.

### B. *Warrant Particularity Requirements*

Pollender argues, in the alternative, that the evidence obtained from the search of his campsite should be suppressed because the search warrant failed to describe the place to be searched and the items to be seized with particularity.

■ The Fourth Amendment requires that a warrant particularly describe the place to be searched. U.S. Const. amend. IV. The test for determining the validity of a warrant is whether the warrant describes the place to be searched with "sufficient particularity to enable law enforcement officers to locate and identify the premises with reasonable effort," and whether any reasonable probability exists that the officers may mistakenly search another premise. *United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir.1985). We have explicitly recognized that "[t]he necessary specificity of the description will differ as between urban and rural areas and depends heavily upon the factual circumstances of each case." *United States v. Williams*, 687 F.2d 290, 293 (9th Cir. 1982). "The practical accuracy rather than the technical precision governs in determining whether a search warrant adequately describes the premises to be searched." *Id.* at 292.

Pollender argues that the search warrant violates the Fourth Amendment by failing to describe the premises to be searched with sufficient particularity because the quadrant identified is a large wilderness area, and the Section described is not, in fact, located "on the West Fork of the Lower Deer Creek," but is instead located on the *Upper* Deer Creek. Although the orange pick-up truck and several tents were also listed to identify the premises, Pollender argues that this is immaterial because the truck, by all accounts, was not located on the premises when the officers commenced the search and the warrant fails to give a description of the tents which would distinguish his campsite from other rural campsites in the area. The district court rejected these arguments, concluding that the warrant specified a detailed location for the campsite which was sufficiently described, especially in light of the rural nature of the area to be searched. The court found the mistaken reference to "Lower Deer Creek" rather than "Upper Deer Creek" immaterial because, aside from this error, all other information in the warrant regarding the location—the Cherry Creek Road reference as well as the Township, Range, Section and Quarter Sections—was accurate. We agree.

This court has had occasion to comment on technical misstatements in a search warrant. In *Turner*, 770 F.2d at 1511, we upheld the validity of a warrant notwithstanding a technically incorrect address because we found virtually no chance that the officers involved in the search "would have any trouble locating and identifying the premises to be searched, or that [they] would mistakenly search another house" as they had personally surveyed the place to be searched prior to applying for the warrant. We find *Turner* particularly instructive because, as is the case with Pollender's campsite, the premises to be searched were located in a rural area. In *Turner*, we relied on the fact that "no nearby house met the warrant's detailed description; the address in the warrant was reasonable for the location intended; the house had been under surveillance before the warrant was sought; the warrant was executed by an officer who had participated in applying for the warrant and who personally knew which premises were in-

tended to be searched; and the premises that were intended to be searched were those actually searched." *Id.* at 1511; *see also United States v. Gitcho,* 601 F.2d 369, 371–72 (9th Cir.1979) (warrant met particularity requirement even though it misstated address of premises because the address, though technically incorrect, was reasonable for the location intended; the agents executing the warrant personally knew which premises were intended to be searched; those premises were under constant surveillance while the warrant was obtained; and the premises which were intended to be searched were those actually searched).

■ In the case at bar, the warrant described the location to be searched with sufficient particularity. Despite the technically misstated address, two of the agents executing the warrant personally knew which premises were intended to be searched; the absence of Pollender's truck at the outset of the search and the warrant's misstated address were both immaterial to identifying his premises. As the government correctly points out, the warrant's mistaken reference to the Lower Deer Creek, rather than the Upper Deer Creek, could not have caused any confusion in this case because Cherry Creek Road is the only road in Section 21, and it leads only to the Upper Deer Creek. Furthermore, the address in the warrant was reasonable for the rural location of the campsite, and the premises that were intended to be searched were those actually searched. Under these circumstances, suppression is not appropriate.

Pollender further argues that the warrant violates the Fourth Amendment by failing to particularly describe the items subject to seizure because the warrant's open-ended description of "any tents, camping equipment, backpacks, etc." places an inappropriate amount of discre-

tion in the hands of the law enforcement officers conducting the search. The district court found this language sufficiently particular, and we find no error in this conclusion.

■ The Fourth Amendment requires that a warrant particularly describe both the place to be searched *and* the person or things to be seized. U.S. Const. amend IV. The description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized. *See United States v. Silva,* 247 F.3d 1051, 1057 (9th Cir.2001); *United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir.1986). This requirement prevents general, exploratory searches and indiscriminate rummaging through a person's belongings. *See id.; United States v. McClintock,* 748 F.2d 1278, 1282 (9th Cir.1984). It also ensures that the magistrate issuing the warrant is fully apprised of the scope of the search and can thus accurately determine whether the entire search is supported by probable cause. *Spilotro,* 800 F.2d at 963; *United States v. Hillyard,* 677 F.2d 1336, 1339 (9th Cir.1982).

■ The specificity required in a warrant varies depending on the circumstances of the case and the type of items involved. *Spilotro,* 800 F.2d at 963. "Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible." *Id.; see also United States v. Cardwell,* 680 F.2d 75, 78 (9th Cir.1982). "While a search warrant must describe items to be seized with particularity sufficient to prevent a general, exploratory rummaging in a person's belongings, it need only be reasonably specific, rather than elaborately detailed." *United States v. Rude,* 88 F.3d 1538, 1551 (9th Cir.1996) (internal quotation marks and citations omitted).

■ In determining whether a description is sufficiently precise, we have concentrated on one or more of the following: "(1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." *Spilotro,* 800 F.2d at 963 (internal citations omitted); *accord United States v. Lacy,* 119 F.3d 742, 746 n. 7 (9th Cir.1997); *United States v. Noushfar,* 78 F.3d 1442, 1447 (9th Cir. 1996).

■ Using these criteria, the warrant issued for the search of Pollender's campsite plainly meets the particularity requirements of the Fourth Amendment. First, there was probable cause to seize "any dangerous drugs and drug paraphernalia, or any other items which are contraband/evidence/fruits of the crime/instrumentalities or articles used in the commission of the crimes." The affidavit offered in support of the search warrant alleged knowledge of Pollender's past history of drug involvement, a description of Pollender's truck which matched the description of one involved with the distribution of methamphetamine according to a reliable source, purchase by Pollender's passenger and co-defendant, Mann, of toluene and xylene (precursors to methamphetamine), and unused coffee filters and burned tinfoil in Pollender's hotel room (used to filter and smoke methamphetamine). Second, the warrant gave objective standards to distinguish the items to be seized and was limited specifically to drugs, drug paraphernalia, and other evidence or instrumentalities accompanying commission of the crime. *Cf. United States v. Kow,* 58 F.3d 423, 425, 427–28 (9th Cir.1995) (finding overbreadth where warrant set no time limits and allowed seizure of "essentially all of the business's records, computer hardware and software, files, ledgers, and invoices"). Third, it was not necessary for the government to be more specific because there was probable cause to seize virtually all items found at the campsite, and the officers had no additional information available that would have allowed them to describe the items more particularly at the time the warrant was issued.

In sum, the district court correctly concluded that the search warrant described, with sufficient particularity, the premises to be searched and the items to be seized. The court's decision denying the motion to suppress on this ground is affirmed.

## C. Sufficiency of the Evidence

Finally, Pollender and Mann argue that the evidence introduced at trial was insufficient to sustain their conviction on Counts IV and V of the indictment. Appellants were each convicted on two counts of knowingly possessing a firearm in furtherance of a drug trafficking offense. 18 U.S.C. § 924(c)(1)(A). Count IV of the indictment charged Appellants with possession of a Smith & Wesson .40 caliber semi-automatic pistol found in Pollender's pickup truck, and Count V charged them with possession of a pen gun, also found in the truck. In considering such a claim, we have held that "we must affirm the convictions if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found [the defendant] guilty beyond a reasonable doubt of each element of the crimes charged." *United States v. Corral–Gastelum,* 240 F.3d 1181, 1183 (9th Cir.2001) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);

*United States v. Sanchez–Mata,* 925 F.2d 1166, 1166 (9th Cir.1991).

Counts IV and V both allege violations of 18 U.S.C. § 924(c)(1)(A), which makes it a crime to use or carry a firearm "during and in relation to any crime of violence or drug trafficking crime" *or* to possess a firearm "in furtherance of any such crime." In order to establish the violations alleged, the government had to prove three elements: (1) that Pollender and Mann participated in the conspiracy to manufacture methamphetamine charged in count I of the indictment; (2) that they possessed the firearms;[2] and (3) that their possession was "in furtherance of" the conspiracy to manufacture methamphetamine. Appellants concede that the government has proven a drug conspiracy; they challenge only the evidence introduced in support of the second and third elements. We need address only the third element.

Appellants contend that the evidence was insufficient to prove that their possession was "in furtherance of" the drug conspiracy. In *United States v. Krouse,* 370 F.3d 965 (9th Cir.2004), we recently interpreted the "in furtherance of" language of 18 U.S.C. § 924(c)(1). Emphasizing the importance of this element, we cautioned that "[e]vidence that a defendant merely possessed a firearm at a drug trafficking crime scene, without proof that the weapon furthered an independent drug trafficking offense, is insufficient to support a conviction under § 924(c)." *Krouse,* 370 F.3d at 967 (citations omitted). We require "proof that the defendant possessed the weapon to promote or facilitate the underlying crime" in order to sustain a conviction under § 924(c). *Id.* (citations omitted). Notably, we expressly condemned the notion that "loaded or unregistered firearms

are particularly indicative of drug trafficking or crimes of violence," holding instead that "sufficient evidence supports a conviction under § 924(c) when facts in evidence reveal a nexus between the guns discovered and the underlying offense." *Id.* at 968. Nonetheless, in *Krouse* we found "ample evidence" to support a conviction where five high caliber firearms—three of which were loaded—were readily accessible in a room containing a substantial quantity of drugs and drug trafficking paraphernalia. *Id.* This case presents a more complex set of facts.

 The firearms retrieved from Pollender's truck were locked inside a safe, the key to which was found lying on a propane tank inside the sleeping tent. This fact alone distinguishes the case from *Krouse* and renders it more difficult to determine whether Appellants' possession was for the promotion of drug trafficking, or whether it furthered other, perhaps legitimate, purposes. *See id.* The government points out that Appellants' possession of both weapons was illegal; possession of the unregistered pen gun was illegal as to both Mann and Pollender and possession of the Smith & Wesson pistol was illegal as to Pollender because he was a convicted felon. This provides a sufficient ground upon which to convict Appellants of possessing an unregistered pen gun in violation of 26 U.S.C. §§ 5861(d) and 5845(e), and for convicting Pollender of possessing two firearms while being a convicted felon in violation of 18 U.S.C. §§ 922(g)(1). To conclude, however, that Appellants' possession furthered a drug trafficking conspiracy simply because the weapons were unregistered or illegal is to accept precisely the sort of questionable inference

---

2. The government does not contend that this case meets the "use or carry" prong of

§ 924(c)(1)(A).

we disapproved of in *Krouse*. If we were to uphold Appellants' convictions on this ground, it would render the "in furtherance of" element mere surplusage.

The government invites us to hold that because pen guns are inherently dangerous and generally lacking in usefulness except for violent and criminal purposes, possession of such a weapon satisfies the "in furtherance of" element. We decline to establish such a rule. It contradicts not only our reasoning in *Krouse*, but also runs roughshod over the requirement that the government set forth facts revealing a nexus between the guns discovered and the underlying offense. *Krouse*, 370 F.3d at 968.

In sum, even when viewed in the light most favorable to the government, the record demonstrates no evidence introduced at trial that would tend to establish that Appellants' possession furthered their drug trafficking conspiracy. The only evidence adduced at trial showed that the guns were not at hand, as in *Krouse*, but locked in a safe in a truck, the key was kept in the area of the campsite in which Pollender and Mann slept, and the guns were not easily accessible in an area where drugs were manufactured and stored. Mere illegality, while sufficient to support a conviction where only possession is required, is insufficient evidence of furtherance. We recognize that persons such as Mann and Pollender, who are engaged in criminal activities, will frequently carry weapons to protect their enterprise. But Congress has not made mere possession, when it occurs contemporaneously with drug manufacture, a strict liability crime. The government has failed to prove that Mann and Pollender's possession furthered their criminal conspiracy.

The district court's denial of Pollender and Mann's motion for acquittal on this ground is reversed.

## IV. CONCLUSION

The judgment of the district court denying Appellants' motion for acquittal with respect to Counts IV and V of the indictment is REVERSED. In all other respects the judgment of conviction is AFFIRMED. Appellants' sentences are VACATED and the case is REMANDED for resentencing.