**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Ronald D. HALL, Defendant–Appellee.**

No. 95–30285.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 20, 1996.

Decided May 6, 1997.

Wan J. Kim, United States Department of Justice, Washington, DC, for plaintiff-appellant.

Rex Lamont Butler and Linda S. Thomas, Rex Lamont Butler & Associates, Anchorage, AK, for defendant-appellee.

Before: SCHROEDER and KLEINFELD, Circuit Judges, and BREWSTER, District Judge.*

KLEINFELD, Circuit Judge.

The district court suppressed evidence because a police officer testifying at the search warrant hearing deliberately or recklessly withheld crucial information undermining an informant's credibility. We affirm.

### ·FACTS

A state investigation and state search warrant led to a federal prosecution of Ronald Hall for possession of cocaine with intent to distribute. The state troopers made a controlled buy of cocaine from a woman in Anchorage. The troopers tracked her to her source, David Dang. Using a search warrant not at issue in this case to search Dang and his possessions, the troopers found a great deal of cash on Dang's person and at his locker at work, cocaine in his car, and cocaine dealing equipment at Dang's house.

After he was arrested, Dang told the troopers that his source of cocaine was a man named "Ron" who lived in trailer space 56. The police asked Dang to take them there, and as they drove south, Dang spotted a red and white pickup truck which he said was Ron's. They followed it to parking space 56 in a trailer park. When the police checked the truck's license plate, they confirmed that it belonged to a Ronald Hall. Several people named Ronald Hall lived in Anchorage at the time.

---

* The Honorable Rudi M. Brewster, United States District Judge, for the Southern District of Cali-   fornia, sitting by designation.

To get a search warrant for the trailer, a state trooper and a state prosecutor took Dang to a state magistrate. Instead of presenting affidavits, the trooper and Dang gave live testimony under oath. Based on the testimony, the magistrate issued a search warrant for the trailer at space 56. Upon serving it, the troopers found cocaine, cocaine sales equipment, large amounts of cash, and other evidence of narcotics dealing. Hall was charged in federal court. The magistrate judge held a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and found that the state trooper "either intentionally or recklessly" withheld information bearing on Dang's credibility, several of his criminal convictions and "most significantly, two criminal matters that went to the heart of Dang's character and credibility, namely: the probation violation involving death threats to a wounded police officer, and the 1990 conviction for the offense of falsely reporting a crime." The district judge considered the magistrate judge's two reports and recommendations, adopted them, and suppressed the evidence found in the search. The magistrate judge and district judge reasoned that since the state trooper intentionally or recklessly withheld information critical to the magistrate's evaluation of Dang's credibility, and Dang's credibility was "absolutely critical," the magistrate would probably not have issued a search warrant had he known the truth.

There was no evidence of probable cause to believe that narcotics and drug dealing paraphernalia were in the trailer, except for what Dang said. Dang had a criminal conviction for making a false report to the police. The record does not show the citation, but presumably this was for the crime Alaska calls "making a false report." *See* AS 11.56.800. A person commits this crime giving "false information to a peace officer with the intent of implicating another in a crime," AS 11.56.800(a)(1), or in various other ways makes false reports or gives false alarms. The state trooper withheld this information from the magistrate.

Dang had a substantial criminal record in addition to the false report. The state troop-

er testified that Dang told him his record. The trooper also obtained a printout of Dang's criminal history before testifying at the search warrant hearing. The computer printout showed a residential burglary in 1979, harassing communication in 1980, larceny in 1983, "violate terms RO" in 1993, and assault in 1994. Most important for purposes of Dang's credibility, it showed "making a false rep" five years before the search warrant proceeding.

The prosecutor examined the state trooper orally under oath before the state magistrate who was determining probable cause to issue the search warrant. The prosecutor asked the trooper about Dang's criminal history. The trooper testified:

he told me—Mr. Dang himself told me that he'd been involved in minor crimes and that he'd also been involved in a burglary. He had indicated that he's on probation for a domestic violence situation. I've checked department of public safety records which indicate in 1979 conviction for burglary, a 1983 conviction for larceny, and a 1994 conviction for assault. And that may be what he is currently on probation for.

In this testimony, the trooper omitted Dang's 1980 harassing communication and 1990 false report. Dang testified that "I haven't been in trouble for 13 years." That was a lie, but the prosecutor questioning Dang did not confront him with the conflicting evidence. Dang testified that he worked at the state facility for delinquent youth, which tended to support his character and credibility. The trooper said it was "paramount . . . to search as quickly as possible."

Immediately after issuing the search warrant, the magistrate conducted a bail hearing for Dang. This time, the trooper disclosed the false report, though he did not point out to the magistrate that he was disclosing anything new:

Mr. Bleicher: He has a history of burglary in 1979; larceny in 1983; harassing communications, 1980; making a false report in '90; violated terms of restraining order in '93; assault in '94. Mr. Dang has been cooperative with us and advised me of that criminal history prior to me running that. As indicated, he's been employed at

McLaughlin Youth Center for nine years and lived in Alaska for 21 years.

The transcript of the bail hearing gives no indication that the magistrate noticed the additional disclosure, and neither the trooper nor the prosecutor brought it to his attention.

### ANALYSIS

If the defendant establishes perjury or reckless disregard of the concealment of material information by a preponderance of evidence, and with the concealed material provided, the resulting evidence is insufficient to establish probable cause, then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause were lacking." *Franks v. Delaware,* 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978); *United States v. Dozier,* 844 F.2d 701, 705 (9th Cir.1988).

The government concedes that the state trooper recklessly failed to disclose all of Dang's convictions during the search warrant hearing. *See United States v. Stanert,* 762 F.2d 775, 781, amended, 769 F.2d 1410 (9th Cir.1985) (deliberate or reckless omissions can be treated as false statements). Thus, the only question we must answer is whether a common sense determination would establish probable cause to believe that Hall had the objects of the search in his trailer, if the omitted material had been provided. *United States v. Mendonsa,* 989 F.2d 366, 368 (9th Cir.1993).

Dang told the trooper that his supplier was named Ron, a white heavyset male in his 60's. Ron lived in a trailer at space 56. As the trooper and Dang drove in the direction Dang said Ron lived, on one of Anchorage's main thoroughfares, Dang spotted a red and white pickup truck and said it was Ron's. The pickup pulled into space 56, and was registered to a man named Ronald Hall. Dang said Ron hid his cocaine in such places as cereal boxes and cut-out books. The trooper did not say whether the driver of the pickup was a heavyset white male in his 60's.

If Dang was not worthy of belief, then this would not amount to probable cause. How could the trooper tell whether Dang was leading them to his supplier, a competitor, or

to an innocent man? Hiding the cocaine in cereal boxes and cut-out books could be a mere guess, could not be verified until a search was conducted, and was not, in the context of what else was known about Dang, sufficient to make truthfulness probable. *Cf. United States v. Banks,* 539 F.2d 14, 17 (9th Cir.1976). We held in *United States v. Mendonsa,* 989 F.2d 366, 369 (9th Cir.1993), that corroboration of innocent facts such as that a man lived at a particular place, had dogs, and drove a particular car, did not adequately corroborate an anonymous tip. The innocent details do even less to corroborate a tip from a man known to have made a false report to police. The risk of an anonymous tipster is that he may be a liar or ignorant, but he also may be an honest and knowledgeable person scared to reveal his identity. A known liar is less worthy of belief than an individual about whom nothing is known. Many perfectly innocent people doubtless drive red and white pickup trucks and live in trailers, and probably drug dealers know some of those innocent people's vehicles by sight and know their names.

The government argues that because Dang incriminated himself by saying that "Ron" was his supplier, his information gained credibility. It gained some credibility, but not enough to supply probable cause. In *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), the Supreme Court stated that "[a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search." *Id.* at 583, 91 S.Ct. at 2082. In this case, however, the police had already caught Dang red-handed, so his admission of what he knew the police already knew did not make what he said more credible. His claim that "Ron" was his supplier was more in the nature of trying to buy his way out of trouble by giving the police someone "up the chain," than a self-inculpatory statement which also implicated "Ron." Once a person believes that the police have sufficient evidence to convict him, his statement that another person is more important to his criminal enterprise than he gains little credibility from its inculpatory aspect.

The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.

. . .

The fact that a statement is self-inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability. *Williamson v. United States,* 512 U.S. 594, 599–600, 114 S.Ct. 2431, 2435, 129 L.Ed.2d 476 (1994).

The government argues that because Dang testified live, the magistrate had a better chance to evaluate his credibility than if his evidence had come in by way of affidavit. That is true, but not sufficient to establish Dang's testimony as sufficient corroboration. Issuance of a search warrant is not accomplished in an adversary proceeding. The state magistrate depended on the prosecutor and the trooper to present him with the truth, and to bring to his attention problems with their informant's credibility. He was misled. Dang was presented to the magistrate as a man with a record of minor crimes, and a longtime responsible job in the state justice system who had been very helpful to the police. The *ex parte* nature of a search warrant inquiry deprives the issuing magistrate of the benefit of adversary proceedings. *Franks,* 438 U.S. at 169, 98 S.Ct. at 2683.

The magistrate did not know about Dang's false report because the trooper and Dang did not tell him. This information would doubtless have led to more skepticism and perhaps some questions had the magistrate known it. The government argues that the magistrate knew of Dang's more serious crimes, but that is beside the point. What most impeached Dang's credibility was his false report to the police. That crime, more than his crimes carrying higher penalties, suggested the possibility that he would lie to the police to frame an innocent man.

The government argues that this case should be affirmed by analogy to *United States v. Meling,* 47 F.3d 1546 (9th Cir.1995). The defendant in *Meling* was suspected of lacing Sudafed with cyanide to murder his wife, and murdering two other people by planting the poisonous capsules in drug stores. A wiretap search warrant was obtained partly on the basis of an informant the FBI knew (but did not disclose) had past convictions for crimes of dishonesty and an interest in winning reward money. We held that because the crimes were at least ten years old, because impure motives do not necessarily make liars of informants, and because there was "considerable independent evidence" corroborating his testimony, *id.* at 1555, the omissions were immaterial.

When it applied for an extension of the wiretap, the FBI knew more about the informant, information which entirely destroyed his credibility, and did not disclose it. The FBI also presented a great deal of evidence entirely independent of the informant which was highly probative of its probable cause showing, so the informant's lack of credibility was immaterial. The defendant had obtained $700,000 in life insurance on his wife immediately before she was poisoned, aroused the suspicions of everyone who dealt with him by his strange behavior when his wife was hospitalized, mentioned the possibility of cyanide poisoning to the puzzled doctors, and had told his wife she was snoring at night and should take Sudafed to relieve congestion. After his wife was released from the hospital, the defendant had asked her to get copies of her statements so he could go over them, suggested she not cooperate with the prosecutor, and talked with his family about escaping to Canada. With all this independent information, the informant's testimony was not necessary for the magistrate's probable cause finding.

The case at bar is distinguishable from *Meling* because there was virtually no evidence at all without the informant's testimony. Without relying on what Dang said, all the magistrate knew about Hall was that he had been seen driving into a trailer court parking space in a red and white pickup truck.

The magistrate was told of Dang's false report immediately after the search warrant hearing when he held a bail hearing on Dang. The government "does not suggest that this consideration supports a finding of probable cause to issue the warrants," but suggests that "the state magistrate's equanimity when presented with this information" shows he would have issued the warrant regardless. We do not know whether that inference is correct. It is as likely that the state magistrate was thinking about the question before him, bail on Dang, not the completed and closed question of whether to issue a search warrant on Hall. For Dang's bail, the mention of Dang's false report conviction had too little significance to be noticed given all his other convictions.

## CONCLUSION

The government presented no evidence to the magistrate to suggest a probability that Hall had narcotics in his trailer except the word of a man whom it knew had a substantial criminal record, including a conviction for making a false report to police. Under these circumstances, we agree with the conclusion reached by the federal magistrate judge and district judge.

AFFIRMED.