**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MARTIN CANTU RUIZ,
*Defendant-Appellant*.

No. 13-30003

D.C. No.
1:11-cr-00240-
BLW-1

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
February 6, 2014—Seattle, Washington

Filed July 11, 2014

Before: Raymond C. Fisher, Ronald M. Gould,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen;
Dissent by Judge Gould

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's denial of a motion to suppress a shotgun seized during the execution of a search warrant in a case in which the defendant argued that reckless omissions by the search warrant affiant fatally undermined the magistrate judge's finding of probable cause.

The panel wrote that the failure to disclose to the magistrate judge at the time of the warrant hearing drug-related information that raises serious concerns about a witness's credibility is a serious breach of the duty the officer owed to the court. The panel also assumed, without deciding, that two witness's eyewitness statements, standing alone, were not sufficient to support probable cause. The panel affirmed because there was corroboration that the crime being investigated had actually occurred, as well as some specific indication that the identification of the defendant from a photo lineup was sufficiently reliable.

Dissenting, Judge Gould could not agree that there was independent corroboration of a witness's identification of the defendant, sufficient to overcome serious concerns about the witness's credibility.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Randall S. Barnum (argued), Barnum Law, PLLC, Boise, Idaho, for Defendant-Appellant.

Wendy J. Olson and Christian S. Nafzger (argued), Office of the United States Attorney, Boise, Idaho, for Plaintiff-Appellee.

**OPINION**

CHRISTEN, Circuit Judge:

An early-morning shooting, a mysterious alias, and a problematic eyewitness identification led police to the home of Martin Cantu Ruiz, where they found a gun he wasn't supposed to have. Ruiz appeals his conviction for Unlawful Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1), contending that the district court erred by denying his motion to suppress a shotgun seized during the execution of a search warrant at his residence. Ruiz argues that reckless omissions by the search warrant affiant fatally undermined the magistrate judge's finding of probable cause. We have jurisdiction under 28 U.S.C. § 1291, and affirm the district court's denial of Ruiz's motion to suppress.

**BACKGROUND AND PRIOR PROCEEDINGS**

Early on March 21, 2011, police responded to a call from a trailer home in Payette, Idaho. When officers arrived, they found that a man who lived there, Emmett Mills, had been shot in the knee. Detective John Plaza spoke with Mills briefly before he was taken to the hospital.

Mills told the detective he was at home with his girlfriend, Charlene Scales, when he heard a knock on the door at around 4:20 in the morning. The person at the door identified himself as "McDog."[1] Mills opened the door and "McDog" asked for Jessica, but Mills said Jessica wasn't there. Mills described "McDog" as a larger Hispanic male in his thirties with short hair and a black sweatshirt. Mills also saw another, smaller man standing nearby wearing a white clown mask and holding an assault rifle. Mills said the gun looked similar to an AK-47. A neighbor watching from her window also saw a man in a white "Halloween" mask standing near the trailer.

The man who knocked, "McDog," tried to force his way inside the trailer, and a struggle ensued between Mills and "McDog." Scales was seated at a computer, where she could observe the confrontation through a crack between the trailer door and the wall where the door's hinges were attached. Like Mills, Scales spoke with Detective Plaza immediately after the shooting. She told the detective that she witnessed the scuffle, heard the intruder identify himself as "McDog," and saw him try to force his way inside. She described "McDog" as a Hispanic male wearing dark clothes. Scales also reported hearing the popping of the assault rifle as it fired twice. Mills, Scales, and the neighbor all agreed that there had been two shots. After Mills was hit in the left knee by one of the bullets, the assailants fled. Police later found two spent casings outside the front door of the trailer that were consistent with a semiautomatic pistol, not an assault rifle. While searching the area near the front door, Detective Plaza noted that a railing near the door to the home was

---

[1] The spelling is uncertain, and at least one police officer wrote down "Mick-Dog."

"pulled away from the house" where it looked like someone had been "pushed."

Detective Plaza sensed that Scales was evasive when she spoke with police that morning, as if she were hiding something. The police officers obtained consent to search the trailer[2] and found a handgun as well as methamphetamine and a pipe with burnt residue, suggesting that one or more of the home's occupants used drugs. Detective Plaza later testified that Scales and others led him to believe that the items belonged to two other people who had stayed in the back bedroom the previous evening.

Detective Plaza soon learned that the narcotics division of the Payette Police Department was investigating Scales for suspected involvement in drug sales from the trailer. Later on the day of the shooting, an undercover officer associated with the narcotics investigation contacted Scales and made a controlled buy of methamphetamine at the trailer. Caught in the act, Scales and police officers discussed arranging "consideration for her [criminal] charges" if she assisted with future narcotics investigations as a confidential informant. The officers told her that she would not receive extra consideration for providing information about the shooting. Scales seemed interested in the arrangement. The police also noted that she believed the shooting had been related to drugs and money.

The Payette Police Department sought the assistance of nearby law enforcement to locate an individual with the alias "McDog." In response, they received a copy of Ruiz's

---

[2] It is unclear from the record on appeal who consented to the search, but there is no indication that Scales objected to the search.

criminal history, which included the alias "McDog," from the police department in Ontario, Oregon, just over the Snake River.  Officers learned that Ruiz had been booked in the Payette County Jail earlier that month for a separate incident.  His address was listed in Nampa, Idaho, south of Payette.

Police assembled a photo lineup that included Ruiz, which they showed to Mills and Scales two days after the shooting.[3]  Mills could not identify anyone from the lineup, but Scales zeroed in on two of the photos and eventually settled on Ruiz's photo because she recognized a "thing on his face."  She stated she was ninety percent sure Ruiz was the intruder.  On the day Scales identified Ruiz, neither she nor the officers conducting the lineup mentioned the previously discussed informant arrangement.

Payette police officers sought a warrant to search Ruiz's residence.  At the warrant hearing, Detective Plaza told the state magistrate judge most of the factual background described here, but he omitted what police officers knew about Scales's drug-related activity, including: (1) her prior sales of methamphetamine from the trailer; (2) her apparent dishonesty about the presence of drug-related paraphernalia in the trailer; (3) her interest in serving as a confidential informant in the future in exchange for consideration of her drug charges; and (4) her statement to police that the trailer shooting was related to drugs and money.  Detective Plaza also failed to explain that Scales had initially focused on two photographs in the lineup, and that she distinguished between them by a mark on Ruiz's face.

---

[3] From the record it appears the lineup included at least six photographs.

The magistrate judge concluded that there was probable cause to search Ruiz's residence based on the detective's oral testimony. A search conducted at Ruiz's residence pursuant to the warrant turned up a shotgun with an obliterated serial number. The government indicted Ruiz on federal charges of possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d), and unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Ruiz moved to exclude evidence from the search, and the district court held a *Franks* hearing to consider Ruiz's challenge to the probable cause showing for the warrant. *See Franks v. Delaware*, 438 U.S. 154 (1978).

At the *Franks* hearing, the district court found that Detective Plaza recklessly omitted material information about Scales's involvement with drugs and her agreement to act as a confidential narcotics informant in the future. *See United States v. Martinez-Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005) (citing *Franks*, 438 U.S. at 155–56). The district court rejected Ruiz's claims as to other allegedly reckless omissions by the affiant. Taking into account the full record, including the omissions it found, the district court concluded the magistrate judge was not misled. Ruiz appeals.

## DISCUSSION

We review for clear error the district court's finding that a fact was not recklessly omitted from an affidavit supporting probable cause. *Martinez-Garcia*, 397 F.3d at 1215 n.5. We review de novo the district court's conclusion that reckless omissions by a search warrant affiant did not fatally undermine a finding of probable cause. *United States v. Elliott*, 322 F.3d 710, 714 (9th Cir. 2003).

The probable cause standard for a search warrant is whether, based on common sense considerations, there was "a fair probability that contraband or evidence of a crime [would] be found in a particular place." *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The magistrate judge need not determine "that the evidence is more likely than not to be found where the search takes place. . . . The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir. 1991) (alteration in original) (citation and internal quotation marks omitted).

To prevail on a claim that the police procured a warrant through deception, the party challenging the warrant must show that the affiant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. *See Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009). Our evaluation of materiality requires that we consider the effect of any false statements or omissions. "If an officer submitted false statements, the court purges those statements and determines whether what is left justifies issuance of the warrant." *Id.* at 1224. "If the officer omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause." *Id.* "If probable cause remains after amendment, then no constitutional error has occurred." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1084 (9th Cir. 2011).

Assessing whether probable cause exists is "a common sense determination." *United States v. Hall*, 113 F.3d 157,

159 (9th Cir. 1997). We are mindful that "[b]y reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw," and that "[t]o allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning." *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), *amended by* 769 F.2d 1410 (9th Cir. 1985).

First, Ruiz contends that, in addition to the omissions found by the district court, Detective Plaza deliberately or recklessly omitted material information regarding Scales's ability to observe the intruder at the doorway to the house. We disagree. Enough facts were presented about the layout of the trailer and Scales's position inside it for the magistrate judge to inquire further if there was doubt about Scales's ability to see the intruder clearly enough to make an identification. The district court did not clearly err in this part of its ruling.

Second, we reject Ruiz's argument that Detective Plaza also deliberately or recklessly omitted information regarding a potential discrepancy between the neighbor's observations and Mill's and Scales's descriptions of the location of the masked man relative to the home. From the record on appeal, it appears that Detective Plaza accurately described the neighbor's account. We cannot say that the district court's finding on this point was clearly erroneous.

Third, the district court assumed it was reckless to fail to inform the magistrate judge that Scales: (1) initially focused on two of the lineup photos as potentially depicting the intruder, and (2) distinguished between them by a mark on Ruiz's face. We make the same assumption on de novo review, and we agree with the district court that this failure

was not misleading. Scales stated she was ninety percent confident in the identification, indicating some degree of uncertainty but also a high degree of confidence, and the magistrate judge had this statement before him to weigh. The magistrate judge could have inquired about why Scales was not absolutely sure of her identification, if this was a potentially determinative source of doubt.

Fourth, the drug-related information the district court determined was recklessly omitted does raise serious concerns about Scales's credibility and, to a lesser extent, Mills's credibility. The magistrate judge knew nothing of Scales's history of drug sales, her evasiveness concerning the drug paraphernalia at the scene of the shooting, her suggestion to police officers that the shooting was related to drugs and money, or her sale of methamphetamine to an undercover officer on the very afternoon of the shooting that led to discussion of her potential role as a narcotics informant. These are serious omissions. Scales, a drug dealer who continued to operate the afternoon of the shooting, could have been an interested party to a shooting related to drugs and money with a motive to lie about the identity of the intruder. The failure to disclose this information to the magistrate at the time of the warrant hearing is a serious breach of the duty Officer Plaza owed to the court. We fully agree with the district court that "Officer Plaza took a substantial risk in failing to reveal these facts." The question we must decide is "whether probable cause remains once the [evidence presented to the magistrate judge] is supplemented with the challenged omission[s]." *Bravo*, 665 F.3d at 1084; *see also Ewing*, 588 F.3d at 1224.

In *United States v. Hall*, we considered whether probable cause supported a search warrant where the government

recklessly failed to disclose all of an informant's prior convictions during a warrant hearing. 113 F.3d at 159. The informant had recently been arrested for involvement in cocaine dealing, and he was the sole source of crucial information leading to the warrant. *Id.* at 157–59. The government did not disclose several of the informant's convictions, particularly one for making a false report to police. *Id.* at 158. Nor did it disclose a "probation violation involving death threats to a wounded police officer." *Id.* We held that probable cause to search the defendant's trailer for drugs was lacking because, first, the conviction for making a false report to the police seriously undermined the informant's credibility and, second, there was no independent evidence to corroborate the informant's claim that narcotics would be found in the defendant's trailer. *See id.* at 159–61.

By contrast, in *United States v. Reeves*, we held that the failure to disclose a confidential informant's prior criminal history involving dishonest statements to the police did not mislead a magistrate judge into granting a search warrant. 210 F.3d 1041, 1043, 1045–46 (9th Cir. 2000). We distinguished *Hall* because of the presence in *Reeves* of "countervailing evidence which diminishe[d] the adverse effect of the [informant's] prior criminal history." *Id.* at 1045. Specifically, the informant had "previously provided truthful and reliable information to police that led to three other search warrants, narcotics arrests and convictions," and this history rehabilitated and bolstered the informant's credibility. *Id.*

In *United States v. Patayan Soriano*, we again considered the credibility of an informant whose information provided the sole basis for probable cause. 361 F.3d 494, 505 (9th Cir. 2003). After being arrested for forgery, a crime of

dishonesty, the informant proceeded to implicate another person in illegal activity, leading to the issuance of a search warrant. *Id.* at 505–07. Concluding that the informant's statements were sufficiently reliable to support probable cause, we noted that his statements were self-inculpatory, that he provided detailed observations, and that he had no apparent motive to lie, even assuming his primary motive was to get "more lenient treatment for himself by the authorities." *Id.* We reasoned that "there is no indication that [the informant] had a prior criminal record, or any history of unreliability in reporting criminal acts suggesting the possibility that he would lie to the police to frame an innocent man." *Id.* at 507 (citation and internal quotation marks omitted).

Finally, in *Ewing v. City of Stockton*, we considered whether an eyewitness's description of a stabbing incident and identification of a suspect were sufficient to establish probable cause where the search warrant affidavit deceptively represented that the suspect had an arrest record and exaggerated the witness's certainty about a particular detail supporting probable cause. 588 F.3d at 1223–24. We held that the magistrate judge was not misled because the witness provided "ample evidence" in the form of first-hand observations implicating the suspect. *Id.* at 1224. We reasoned that the individual was "a citizen witness, not an informant, and such witnesses are generally presumed reliable." *Id.* We relied upon our prior case law holding that "'[a] detailed eyewitness report of a crime is self-corroborating; it supplies its own indicia of reliability.'" *Id.* at 1224–25 (quoting *United States v. Banks*, 539 F.2d 14, 17 (9th Cir. 1976)).

Although Charlene Scales ostensibly was a citizen witness, under the circumstances of this case her eyewitness identification of Ruiz may not be self-corroborating. Her dishonesty about the drug-related items in the trailer on the morning of the shooting, her personal involvement in the drug trade from which the shooting apparently arose, and her interest in serving as a confidential informant all undermine her credibility. Mills's credibility is likewise lessened, to some extent, by the open presence of drug paraphernalia in the trailer immediately after the shooting. It appears Mills at least tolerated the use of illegal drugs in his home, and he may have known about and tolerated Scales's drug transactions. In light of these circumstances, we assume, without deciding, that Mills's and Scales's eyewitness statements, standing alone, were not sufficient to support probable cause. But because there was corroboration that the crime being investigated had actually occurred, as well as some specific indication that Scales's identification of Ruiz from the photo lineup was sufficiently reliable, we affirm the district court's ruling.

First, there is no evidence that Mills and Scales knew Ruiz, or his "McDog" alias, before the March 21 shooting. This undermines any inference that Mills and Scales conspired to frame Ruiz for the shooting.

Second, the record corroborates that the shooting occurred generally as Mills and Scales described it. Mills, Scales, and the neighbor all observed the two strangers at the trailer that morning, and Mills and the neighbor stated that one of the men wore a white costume mask. All of the witnesses reported that a physical struggle took place around the entrance to the home, and Detective Plaza observed that a railing had been "pulled away" near the door where it looked

like someone had been pushed.  All of the eyewitnesses told police officers they heard two shots fired, and police found two spent casings near the door of the trailer.  Mills, of course, was actually shot in the knee.  Therefore, this case is unlike *Hall*, where the only detailed description of the facts underlying the search warrant came from an informant, and there was no significant physical evidence to corroborate his tip.  *See Hall*, 113 F.3d at 157.

There was also sufficient corroboration of Scales's identification of Ruiz from the photo lineup.  Mills and Scales agreed on the central details of the shooting as well as some more minor details, such as the dark color of the intruder's clothing.  Mills described the intruder as a larger Hispanic male in his thirties, which is generally consistent with Ruiz's physical characteristics at the time of the shooting—he was around six feet tall and twenty-nine years old.  Both Mills and Scales heard the intruder identify himself as "McDog."  Even if Mills and Scales had been motivated to invent details in order to set up Ruiz, it seems unlikely that, in the brief time before police and paramedics arrived, they would have been able to agree on so many details after Mills had already sustained a painful gunshot wound to the knee.

Mills's and Scales's statements that the intruder identified himself as "McDog" are crucial to the probable cause inquiry.  Even without Scales's identification of Ruiz from the lineup, the connection between Ruiz and the "McDog" alias is evidence supporting the probable cause finding.  When police officers from nearby Ontario provided Ruiz's criminal history listing "McDog" as an alias, there was already a booking record for him at the Payette County Jail from earlier that month.  This indicated his presence in the general area and possible involvement in local crime.  Ruiz lived in Nampa,

not far away. There is no suggestion in the record that police officers knew of any other individual in the area using this alias.

The dissent focuses on reasons to presumptively doubt the credibility of Scales's statements to police immediately after the shooting—a point with which we agree. But even if no statement had been taken from Scales after the shooting, police would still have been led to suspect Ruiz because the shooting victim, Mills, reported a physical description and that he heard the shooter identify himself as "McDog." The police had a record of a person using that alias in the area, the description for that person matched the physical description provided by Mills, and both the neighbor's statement and the physical evidence from the crime scene were consistent with, and supported, Mills's account of the incident. These facts bolster the credibility of Mill's and Scales's statements about hearing the nickname "McDog," and also the credibility of Scales's identification of Ruiz from the photo lineup.

The record in this case does not show that either witness had "any history of unreliability in reporting criminal acts suggesting the possibility that [they] would lie to the police to frame an innocent man." *Patayan Soriano*, 361 F.3d at 507 (citation and internal quotation marks omitted). To the contrary, common sense suggests that a man who was just shot in the leg (and his girlfriend) would be very interested in assisting police officers to catch the actual perpetrator. Therefore, though Mills's and Scales's credibility was diminished, it was not entirely undermined. Mills, in particular, was a gunshot victim who did not mislead police officers about the shooting and did not have any criminal record of dishonesty. Mills reported hearing the intruder identify himself as "McDog," and his credibility was only

slightly impaired by the presence of illicit drugs at the residence he shared with Scales.

Finally, there was no indication Mills or Scales exaggerated or fabricated evidence related to the shooting. Both individuals had several opportunities to identify Ruiz more conclusively as the perpetrator, but they failed to do so. If they were interested in framing Ruiz, they could have identified him by name when police arrived at the scene that morning, or at any point afterward. Mills could have picked him out from the photo lineup, but instead he claimed not to recognize any of the individuals in the photos. Scales could have identified Ruiz outright from the lineup, rather than focusing on two photos and then claiming to be ninety percent certain—rather than one-hundred percent—that Ruiz's photo was the right one. In fact, there is no evidence that either individual knew Ruiz prior to the shooting. If, for whatever reason, Mills and Scales intended to leave just enough clues to lead police to Ruiz without arousing the suspicion of law enforcement as to their designs, then it was a trail of bread crumbs worthy of the Brothers Grimm.

We share the district court's concern about the police conduct in this case, but we conclude there is enough evidence in the record corroborating Mills's and Scales's statements to "diminish[] the adverse effect" of their credibility issues in the context of the probable cause inquiry. *Reeves*, 210 F.3d at 1045. In light of the full record, there was a "fair probability" that evidence of the shooting would be discovered at Ruiz's residence. *See DeLeon*, 979 F.2d at 764; *Ewing*, 588 F.3d at 1225. The district court properly

denied Ruiz's motion to suppress evidence obtained as a result of the search warrant.

**AFFIRMED.**

---

GOULD, Circuit Judge, dissenting:

I agree with my colleagues that "the drug-related information the district court determined was recklessly omitted does raise serious concerns about Scales's credibility." Majority Opinion at 10. I regret that I cannot agree that there was independent corroboration of Scales's identification of Ruiz, sufficient to overcome my serious concerns about Scales's credibility. I conclude that the officer's reckless omissions about Scales's drug-related history were not harmless. Under a practical approach, taking into account common sense, a corrected affidavit, including the drug dealing and informant status of Scales, does not establish probable cause.

The record does not show sufficient corroboration that Scales reliably identified Ruiz. Here, there is no question the trailer shooting occurred, and I do not see Scales's and Mills's recounting of the basic details of the shooting, such as how two shots were fired or how the other assailant wore a mask, as strong corroboration of Scales's overall veracity. The shooting happened, but who did it? Was there sufficiently reliable information of Ruiz's involvement to justify the search warrant under the probable cause standard? I conclude there was not.

I do not see how Scales's and Mills's statements that the assailant wore dark clothing and was "a larger Hispanic male in his thirties" contribute to corroborate Scales's identification of Ruiz. *See* Majority Opinion at 14. This general characterization could be true of many people and does not significantly bolster Scales's reliability.

I also disagree with the "crucial" import the majority gives to Scales's and Mills's statements that the assailant identified himself as "McDog" and that police subsequently linked the "McDog" alias to Ruiz through the records of a nearby police department. *See* Majority Opinion at 14–15. The majority claims that this shows Ruiz's "presence in the general area and possible involvement in local crime." Majority Opinion at 14. This seems somewhat corroborative until placed into the context that Scales was a known drug dealer and was known to have lied to police when first interviewed about her ownership of drug paraphernalia found at the scene of the trailer shooting. Mills lived with Scales and could not have been unaware of her drug-related activities. There is little doubt that Scales had contact with other people involved in local criminal activity. So if there are serious outstanding concerns about Scales's credibility, I do not see how the fact that police confirmed an alias of "McDog" in the Payette area provides the type of corroborating evidence that makes her identification of Ruiz more reliable. It may only show that Scales knows Ruiz by his alias, and tried to point a finger at him, a competing drug dealer. The majority suggests that police might have suspected Ruiz because of statements of Mills, but that does not mean that there would have been probable cause to search Ruiz's home. In my view, in this case there was not probable cause for the search absent a credible identification of Ruiz by Scales.

Beyond the weakness of the corroborative evidence, the vast majority of the additional information theoretically supporting probable cause comes from Scales and Mills, not from independent sources. *See United States v. Meling*, 47 F.3d 1546, 1555 (9th Cir. 1995). Because the corroboration here derives from information provided by Scales, it does not compensate for Scales's low credibility. *See id.*

The magistrate judge knew nothing of Scales's recent history of drug sales, Scales's statement to police that the shooting was related to drugs and money, and Scales's sale of methamphetamine to undercover police on the very afternoon of the shooting, leading to her role as a narcotics informant. The majority permits law enforcement to omit all of these essential facts on a theory of harmless error, even where the corroborating evidence is weak and largely comes from Scales, the very interested party whose credibility is challenged.

The Supreme Court has emphasized a "'flexible, common-sense standard' of probable cause." *Florida v. Harris*, 133 S. Ct. 1050, 1053 (2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). Under this common-sense, totality-of-the-circumstances approach to probable cause, the police's reckless omission of an important witness's possible relationship to a past crime should be considered material and misleading to a magistrate judge under circumstances where the omitted information bears strongly on the credibility of that witness and there is inadequate independent corroborating evidence. Where there is significant doubt about the propriety of police practice and its impact on an important credibility determination supporting a probable cause conclusion, we should exercise caution on the side of

the Fourth Amendment and improved police practices, rather than a strained theory of harmless error. I respectfully dissent.