NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 28 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-30124 |
| Plaintiff-Appellee, | D.C. No. 2:21-cr-00054-WFN-1 |
| v. | |
| GORDON LEE MCVAY, AKA Gordy, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, District Judge, Presiding

Submitted July 13, 2023[**]
Seattle, Washington

Before: GRABER, GOULD, and PAEZ, Circuit Judges.
Partial Dissent by Judge PAEZ.

Following a jury trial, Defendant Gordon McVay was convicted of one

count of simple possession of actual (pure) methamphetamine, in violation of 21

U.S.C. § 844(a). McVay appeals the district court's denial of his pre-trial motion

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

to suppress evidence seized during the execution of two search warrants. He argues that the district court erred by: (1) denying his request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978); (2) ruling that a search warrant affidavit established probable cause to search his fifth wheel trailer and camper; and (3) ruling that a second search warrant affidavit established probable cause to search his motorcycle and fanny pack. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

**1.** *Franks Hearing.* Under *Franks*, a defendant has the right to challenge the veracity of statements made in an affidavit supporting a warrant application. 438 U.S. at 155–56. To do so, the defendant must first make "a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). We review *de novo* the district court's denial of a *Franks* hearing. *Id.*

McVay first argues that the affidavit failed to disclose that the confidential informant (CI) initially lied to police officers about her own activity selling drugs. Even assuming that omission of this information was intentionally or recklessly misleading, McVay has not shown that the omitted facts were material. To establish materiality, McVay must show that the omitted information was

"necessary to the finding of probable cause." *United States v. Perkins*, 850 F.3d 1109, 1119 (9th Cir. 2017) (citing *Franks*, 438 U.S. at 156). The CI's initial lies about her own wrongdoing were not material to whether McVay was selling drugs. *Cf. United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), *amended by* 769 F.2d 1410 (9th Cir. 1985).

Second, McVay argues that the affidavit's use of the term "confidential informant," as opposed to "cooperating defendant," bolstered the CI's reliability and created the false impression that she had provided reliable tips in the past. McVay has not shown that it was intentionally or recklessly false to refer to the CI as a "confidential informant." In fact, the CI was not a "defendant" in this case because she was never charged with a crime. Because McVay has not met the first prong of *Franks* with respect to this claim, we do not consider whether the alleged misstatement was material. *See United States v. Martinez-Garcia*, 397 F.3d 1205, 1215 (9th Cir. 2005).

Third, McVay claims that the affidavit recklessly misrepresented the facts regarding the living situation at his residence. He points to two alleged misrepresentations: (1) the affidavit repeats the CI's statement that McVay lived on S. Western Ave., without providing the house number; and (2) it repeats the CI's statement that McVay lived with his mother and sister, without specifying that there were several living spaces on the property or that McVay's mother owned the

3

home.  McVay has failed to show that these statements were recklessly false or misleading.  The affidavit explains that officers had been to McVay's home before and already knew the exact address.  Furthermore, the affidavit accurately describes the property and refers to McVay's activity selling drugs "out of his mother's residence."

McVay also claims that two *Franks* violations undermine the warrant to search his motorcycle and fanny pack: (1) the affidavit for the first warrant states that McVay keeps his fanny pack in the "fifth wheel" trailer, while the affidavit for the second warrant states that McVay keeps the fanny pack on his person; and (2) the second warrant declaration misstates how officers found a gun inside his home.  With respect to both claims, McVay has not made a substantial preliminary showing that the declarations contained intentionally or recklessly false statements or misleading omissions.

**2.**     *Motion to Suppress–Fifth Wheel and Camper*.  McVay argues that evidence seized from the fifth wheel and camper should be suppressed because the search warrant lacked probable cause.  We review *de novo* the denial of a motion to suppress, *United States v. Crawford*, 372 F.3d 1048, 1053 (9th Cir. 2004), and we review *de novo* the determination of probable cause, *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

Where, as here, a search warrant is based on an informant's tip, we must

4

consider the "totality of the circumstances" to determine whether the tip gives rise to probable cause. *Reeves*, 210 F.3d at 1044 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). We consider several factors, including whether: (1) the informant is known or anonymous; (2) the informant has a proven track record of reliability; (3) the informant discloses the basis for her knowledge of the tip; and (4) the tip contains predictive information that is corroborated by police observation. *United States v. Rowland*, 464 F.3d 899, 907–08 (9th Cir. 2006). Because the CI in this case had a history of crimes of dishonesty, the affidavit also was required to set forth "additional evidence" that "bolster[ed] the informant's credibility or the reliability of the tip." *United States v. Elliott*, 322 F.3d 710, 716 (9th Cir. 2003) (citation omitted).

Sufficient factors support a finding of probable cause based on the CI's tip. First, the CI was a known person and could "be held accountable for providing false information in violation of the law." *Rowland,* 464 F.3d at 907–08. The CI also adequately revealed the basis for her knowledge of McVay's activities. She explained that she had known McVay her "whole life," and she provided detailed information about McVay's property and where he stored his drugs. *See United States v. Patayan Soriano*, 361 F.3d 494, 507 (9th Cir. 2004). Finally, there was corroboration of the CI's statement that "several people come and go from [McVay's] property at all times of the day." The affidavit explains that officers

5

had seen "a large increase in vehicle and foot traffic at [McVay's] residence."

While the CI has a criminal history that includes various drug related crimes, theft, identity theft, and obstruction of law enforcement, there was nothing in her criminal record that demonstrates "any history of unreliability in reporting criminal acts suggesting the possibility that [she] would lie to the police to frame an innocent man." *United States v. Ruiz*, 758 F.3d 1144, 1152 (9th Cir. 2014) (quoting *Patayan Soriano*, 361 F.3d at 507 (citation omitted)). While her statements may have been motivated by a desire for "more lenient treatment for [herself] by the authorities," she also made "self-inculpatory" statements against her penal interest as she admitted to purchasing meth from McVay that morning. *Id.*

Because the CI's tip was sufficiently reliable to establish probable cause, the district court did not err in denying McVay's motion to suppress evidence seized from the fifth wheel and camper.

**3.** *Motion to Suppress – Motorcycle and Fanny Pack.* McVay argues that evidence seized from his motorcycle and fanny pack should be excluded because officers lacked probable cause to seize them.[1] Officers seized McVay's

---

[1] McVay also argues that officers illegally extended the traffic stop before seizing his motorcycle and fanny pack. This argument is unpersuasive. Officers had probable cause to pull McVay over for running a red light, and they arrested him on a bench warrant. Therefore, any subsequent investigation was incident to the arrest and not a part or prolongation of the traffic stop.

6

motorcycle and fanny pack without a warrant after they stopped him for a traffic offense and arrested him on an unrelated warrant. "Because warrantless searches and seizures are *per se* unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement." *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012).

The automobile exception applies, so we do not address the other exceptions argued by the government. Under this exception, police may seize a vehicle without a warrant if there is probable cause to believe that the vehicle contains evidence of a crime. *United States v. Bagley*, 772 F.2d 482, 491 (9th Cir. 1985). Officers had probable cause to believe that McVay was storing drugs in the fanny pack that was on the motorcycle's handlebars, based on information that the CI provided. Notably, the CI told officers that McVay kept methamphetamine in a black fanny pack that he kept on his person. The seizure of the fanny pack and motorcycle were therefore justified under this exception.[2]

**AFFIRMED.**

---

[2] After seizing McVay's fanny pack and motorcycle, officers obtained a valid warrant to search those items. That warrant and the ensuing search were supported by probable cause. *See United States v. Lingenfelter,* 997 F.2d 632, 639 (9th Cir. 1993) ("A canine sniff alone can supply the probable cause necessary for issuing a search warrant if the application for the warrant establishes the dog's reliability.").

*United States v. Gordon McVay*, No. 22-30124


PAEZ, Circuit Judge, dissenting in part:

Crimes of dishonesty have an adverse effect on the credibility of confidential informants. *See United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir. 2000). In fact, "[i]n the absence of countervailing evidence to bolster the informant's credibility or the reliability of the tip, an informant's criminal past involving dishonesty is *fatal* to the reliability of the informant's information, and his/her testimony cannot support probable cause." *Id.* (emphasis added). No such "countervailing evidence" is present in this case. Because the majority ignores our clear caselaw on this point, I respectfully dissent from the decision to affirm the denial of McVay's motion to suppress evidence seized from the fifth wheel and camper.

From the outset, the confidential informant (CI) had multiple convictions for crimes of dishonesty, including theft, identify theft, and possession of stolen property. Yet the affidavit is devoid of facts that enhance her credibility or the reliability of the information she provided. In prior cases, we have excused a history of crimes of dishonesty only because the informant had a track record of providing reliable information to law enforcement. *See United States v. Elliott*, 322 F.3d 710, 716 (9th Cir. 2003) (finding informant credible because he had

1

provided "six reliable drug-related tips"); *Reeves*, 210 F.3d at 1045 (finding informant credible because he "had previously provided information that led to three other investigations and arrests"). In other cases, we have treated informants as credible because they voluntarily admitted to criminal activity beyond what the police already knew. *United States v. Patayan Soriano,* 361 F.3d 494, 506 (9th Cir. 2004). None of those circumstances are present here. The CI had never provided reliable information to law enforcement, and she did not admit to any criminal conduct beyond what she was caught "red-handed" doing. *See United States v. Hall*, 113 F.3d 157, 159 (9th Cir. 1997). Her admission "of what [s]he knew the police already knew did not make what [s]he said more credible." *Id.* In short, there is no countervailing evidence in the affidavit "sufficient to outweigh the doubts about the informant's credibility raised by the history of criminal conduct involving dishonesty." *Reeves*, 210 F.3d at 1045.

Putting aside the CI's criminal past, which should be fatal to her credibility, there are additional factors that weigh against crediting the CI's tip. The CI did not offer predictive information that was later corroborated by police investigation. *See United States v. Rowland*, 464 F.3d 899, 908 (9th Cir. 2006). Officers attempted to conduct a controlled buy using the CI, but that buy went awry, and the district court correctly found that it "could not be used to support reliability."

2

Apart from the failed controlled buy, officers made no other attempts to obtain predictive information from the CI prior to submitting the affidavit.

Likewise, the vast majority of the CI's tip was completely uncorroborated by other sources. We have repeatedly emphasized that a statement's credibility is "'enhanced' when [it] gives a detailed account of events that is corroborated by the statements of other confidential informants." *United States v. Alvarez,* 358 F.3d 1194, 1203 (9th Cir. 2004) (citation omitted); *see also United States v. Martinez-Garcia*, 397 F.3d 1205, 1216 (9th Cir. 2005) (emphasizing the importance of corroboration). Here, the affidavit does not contain statements from anyone other than the CI. The affidavit recounts a few vague, anonymous rumors about McVay, stating that an officer heard from "several sources" that McVay "is selling drugs out of his mother's residence." But the affidavit never reveals who those sources are or the basis of their knowledge. At bottom, it appears officers submitted the affidavit without conducting any independent investigation to corroborate the CI's statements.

In my view, the facts in this case are essentially identical to *Hall*, where we rejected a search warrant based on the unreliability of an informant's tip. 113 F.3d at 157. The informant in *Hall* had been arrested for selling drugs and had a history of crimes of dishonesty. *Id.* at 157–58. The informant told police that his supplier was a man named "Ron" who lived in trailer space 56, stored cocaine in cereal

boxes and cut-out books, and drove a red and white pickup truck. *Id.* at 159. We held that the informant's tip did not give rise to probable cause because there was no evidence that Ron had drugs in his trailer "except the word of a man who[] . . . had a substantial criminal record, including a conviction for making a false report to police." *Id.* at 161. Here, a CI with a history of crimes of dishonesty told police that McVay was her drug supplier after she was arrested for selling drugs. As in *Hall*, the search warrant for McVay's residence lacks probable cause because there is "virtually no evidence at all" without the CI's statements. *Id.* at 160.

The majority provides several reasons for treating the CI as credible, but none are persuasive under our caselaw. The majority first emphasizes the CI's knowledge about McVay's activities, pointing out that she provided "detailed information about McVay's property and where he stored his drugs." We rejected an identical argument in *Hall*. As we explained, the informant's detailed tip about "[h]iding the cocaine in cereal boxes and cut-out books could be a mere guess, could not be verified until a search was conducted, and was not . . . sufficient to make truthfulness probable." *Id.* at 159. Furthermore, knowledge of "innocent details," such as where someone lives or what their property looks like, does not sufficiently corroborate a tip from a person convicted of a crime of dishonesty. *Id.*

The majority also claims that the CI made a self-inculpatory statement to police when she admitted to purchasing meth from McVay earlier that day. But

4

the CI only identified McVay as her supplier after she was caught selling meth to another confidential informant. A CI does not enhance her credibility simply because she attempts to shift blame for her own criminal activity to someone higher "up the chain." *Id.* To the contrary, "[o]nce a person believes that the police have sufficient evidence to convict h[er], h[er] statement that another person is more important to h[er] criminal enterprise than [s]he gains little credibility from its inculpatory aspect." *Id.* Similarly, in *Hall*, the court discredited the informant's "claim that 'Ron' was his supplier" because it "was more in the nature of [the informant] trying to buy his way out of trouble by giving police someone 'up the chain' than a self-inculpatory statement." *Id.*

Finally, the majority attempts to minimize the CI's criminal history by stating that, unlike the informant in *Hall*, "nothing in her criminal record" indicates that she would lie to police to frame an innocent man. But we do not distinguish between the crime of making a false report to police and other kinds of crimes of dishonesty for purposes of evaluating an informant's credibility. Rather, "*[a]ny* crime involving dishonesty *necessarily* has an adverse effect on an informant's credibility," regardless of whether those crimes are of a "sufficiently different character from those of the informant in *Hall*." *Reeves,* 210 F.3d at 1045 (emphasis added).

5

Because the affidavit hinges entirely on the tip of a CI who had prior convictions for dishonesty, who had never provided assistance to law enforcement, and who failed to provide predictive information or information that could be corroborated by other sources, I would conclude that the warrant did not establish probable cause to search McVay's fifth wheel trailer and camper.

As for the seizure of McVay's fanny pack and motorcycle, I disagree with the majority's reasoning but concur in the result. In my view, the automobile exception does not apply because officers did not have probable cause to seize the fanny pack and motorcycle. *See United States v. Bagley*, 772 F.2d 482, 491 (9th Cir. 1985). The government has identified many facts that it claims support the existence of probable cause. But almost all of these facts depend, again, on the reliability of the CI's statements to law enforcement. Notably, the CI is the only person who told officers that McVay stored drugs in a fanny pack. For the reasons stated above, the district court erred in crediting the CI's statements.

Nonetheless, I would uphold the seizure of McVay's fanny pack and motorcycle under the good faith exception. Under this exception, evidence is admissible if an officer shows that he acted in "good faith" or "objectively reasonable reliance." *Herring v. United States*, 555 U.S. 135, 142–43 (2009). The relevant question is "whether a reasonably well trained officer would have known that the search [or seizure] was illegal." *United States v. Song Ja Cha*, 597 F.3d

6

995, 1005 (9th Cir. 2010) (citation omitted). The officers ultimately searched

McVay's motorcycle and fanny pack pursuant to a lawful warrant supported by

probable cause. In this circumstance, the good faith exception applies so that the

fruits of that search were admissible at trial.